UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GEORGE J. DUCKETT,

                         Plaintiff,

         -against-

ANTHONY FOXX,
Secretary of Transportation,

                         Defendant.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

12-CV-5203 (NGG) (LB)

NICHOLAS G. GARAUFIS, United States District Judge.

Pro se Plaintiff George J. Duckett brings this employment discrimination action against Defendant Anthony Foxx, United States Secretary of Transportation, for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"). (See Compl. (Dkt. 1).) Plaintiff alleges that Defendant discriminated against him on the basis of age and race when Plaintiff was not promoted upon interviewing for an open position at the Federal Aviation Administration ("FAA"). (Id. ¶¶ 4, 7 & Attach. ¶ 1.) With leave of court (see Apr. 30, 2014, Order (Dkt. 45)), Plaintiff and Defendant have cross-moved for summary judgment. (See Def.'s Not. of Mot. (Dkt. 51); Mem. of Law in Supp. of Pl.'s Mot. for Summary J. ("Pl's Mem.") (Dkt. 60)[1].) For the reasons discussed below, Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment is DENIED.

---

[1] Plaintiff filed a brief in support of his motion for summary judgment (which the court refers to as Plaintiff's Memorandum), and a brief opposing Defendant's motion for summary judgment. (See Pl.'s Response to Def.'s Mot. for Summary J. (Dkt. 56).) In deciding the parties' cross-motions for summary judgment, the court has reviewed all materials provided by the parties. Because Plaintiff's two briefs are substantially similar, the court cites to Plaintiff's Memorandum when necessary.

1

I.   BACKGROUND

A.   Facts

Except as otherwise noted, the following facts are undisputed. Where facts are in dispute, the court credits the non-movant's version of the particular fact.[2] The court has not included in this section facts introduced by the parties that are not material to Plaintiff's claims.

1.   Plaintiff's Employment Background

Plaintiff was born in 1940. (Def.'s Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Def.'s 56.1") (Dkt. 53) ¶ 1.) He is African-American. (See Tr. of Dec. 12, 2013, Dep. of George J. Duckett ("Pl. Dep.") (Decl. of Assistant U.S. Att'y Rachel G. Balaban ("Balaban Decl.") (Dkt. 52), Ex. 1) at 94:18-95:12; see also Pl.'s Mem. at 1 ("The plaintiff is an African American male, who was 70 years old at the time of the job application . . . .").) Plaintiff has a Master's degree in applied mathematics. (Def.'s 56.1 ¶ 2.) Plaintiff began working for the FAA in 1996 as an aerospace engineer at the agency's New York Aircraft Certification Office ("NYACO"), and to date has remained in that position. (Id. ¶ 3.) Among Plaintiff's areas of knowledge are advanced composite materials. (See Pl.'s Statement of Material Facts ("Pl.'s 56.1") (Pl.'s Mem., Appendix A) ¶ 15; see also Pl. Dep. at 74:2-4; Pl.'s Mem. at 7 (discussing Plaintiff's experience with composite structures during his time at the FAA).)

2.   The Position

On July 1, 2010, Plaintiff applied to be promoted to the position of Aviation Safety Engineer Damage Tolerance Specialist (the "Position"), under FAA Vacancy Announcement

---

[2] Because Plaintiff is proceeding pro se, the court has performed an independent review of the entire record submitted by the parties to determine whether there are disputed issues of material fact. See McClendon v. Cnty. of Nassau, No. 11-CV-0190 (SJF) (ETB), 2012 WL 4849144, at *2 (E.D.N.Y. Oct. 11, 2012); Williams v. City of New York, No. 06-CV-6601 (NGG), 2009 WL 3254465, at *1 n.1 (E.D.N.Y. Oct. 9, 2009).

No. ANE-AIR-10-100-121524 (the "Vacancy Announcement"). (Def.'s ¶ 5; Pl.'s 56.1 ¶¶ 1-2.) According to the Vacancy Announcement, the duties of the Position included "[p]rovid[ing] technical corporate expertise in aircraft fatigue, damage tolerance, fracture mechanics and advanced materials for compliance with applicable safety assessment FAR requirements." (Def.'s 56.1 ¶ 6; see also Pl.'s 56.1 ¶ 10.) The successful applicant would be "responsible for being current on the latest state-of-the-art methodologies and policies by working closely with the Chief Scientific Technical Adviser" (the "CSTA") and others. (See Def.'s 56.1 ¶ 6.)

With respect to the Vacancy Announcement's references to "advanced materials," that broad subject includes, inter alia, "composite materials." (Pl.'s 56.1 ¶ 11; see also Tr. of Mar. 26, 2014, Dep. of Robert Eastin ("Eastin Dep.") (Suppl. Decl. of Pl. Pro Se George J. Duckett ("Suppl. Duckett Decl.") (Dkt. 65), Ex. E) at 14:15-20 ("Advanced materials would include new alloys, new metal alloys that haven't been used before and aren't certified yet. It would include composite materials. It would include what we call hybrid materials, which are a mix of composite and metal. And others; ceramics.").)

Ultimately, the FAA selected Dr. Andreas Rambalakos for the Position. (Def.'s 56.1 ¶ 18.) Rambalakos was also an aerospace engineer at the NYACO at the time of the selection. (Id.) He was born in 1966, and holds a Doctorate degree in engineering mechanics. (Id. ¶¶ 19-20; see also Pl.'s 56.1 ¶ 13.) Rambalakos is White. (Pl. Dep. at 92:6-7.) A third candidate, Cathy Nguyen-Quoc, interviewed for the Position, but was not selected. (Def.'s 56.1 ¶ 21.) Nguyen-Quoc was also an aerospace engineer at the NYACO at the time. (Id.)

### 3. The Interview Process

Anthony Socias, the office manager of the NYACO, was the selecting official for the Position, and was responsible for making the decision of which candidate to promote. (Id.

¶¶ 8-9, 22.) Socias formed an interviewing panel comprised of three other FAA employees (id. ¶ 23): Anthony Gallo, Robert Eastin, and Ronald Rathgeber (id. ¶ 11). Gallo was the branch manager of the NYACO (id. ¶ 12), Eastin was the FAA's CSTA for fatigue and damage tolerance (id. ¶ 14), and Rathgeber was the manager of the FAA's military certification office (id. ¶ 16). The candidate selected for the position would ultimately report to Gallo. (Id. ¶ 26.)

As the FAA's CSTA for fatigue and damage tolerance, Eastin was the ranking expert at the agency in those fields. (Id. ¶ 28.) In advance of the interviews, Socias requested that Eastin draft specialized technical questions in the areas of fatigue and damage tolerance to be used during the interviews. (Id. ¶ 30.) These technical questions covered fundamental issues concerning fatigue and damage tolerance that could be found in most standard textbooks on the subjects. (Id. ¶ 31.) The answers to the technical questions were also contained in workshop materials (the "Workshop Materials") that Eastin had prepared for a three-day workshop that took place in the summer of 2009 at the NYACO on the topics of fatigue and damage tolerance. (Id. ¶ 27.) Plaintiff had attended the workshop, as had Rambalakos. (Id. ¶ 29.) Plaintiff reviewed the Workshop Materials in advance of his interview. (Id. ¶ 51.)

Socias also requested that Rathgeber draft leadership questions to be used during the interviews. (Id. ¶ 33.) Ultimately, Socias selected fifteen technical questions and two leadership questions to be used in each of the three interviews. (Id. ¶ 34; Pl.'s 56.1 ¶ 8.) While some of the questions selected dealt with "advanced materials" in general terms, none dealt exclusively with the sub-area of composite materials, and no question had the specific word "composites" embedded into it. (Eastin Dep. at 14:21-17:14.)

The interview panel conducted in-person interviews with the three candidates who were previously qualified by human resources (Plaintiff, Rambalakos, and Nguyen-Quoc).

4

(Def.'s 56.1 ¶ 35; Pl.'s 56.1 ¶ 3.) Each candidate was subjected to the same interview conditions; in particular, candidates were given ten minutes to review the questions before the interview began, and each interview lasted one hour. (Def.'s 56.1 ¶¶ 36-38; see also Pl's 56.1 ¶ 14.) The panel asked verbal questions during the interviews, and the candidates provided verbal responses. (Def.'s 56.1 ¶ 39.) Socias was present for each interview, but did not ask any questions. (Id.)

For each question, the panel members together rated the candidate's response on a scale of 1 to 5, with 5 being the highest score possible. (Id. ¶¶ 40, 42.) Each question was weighted evenly. (Id. ¶ 41.) Socias did not participate in the scoring process. (Id. ¶ 42.) In addition, each candidate was given a "KSA" score based on their "knowledge, skill, and abilities." (Id. ¶ 43.) The maximum KSA score was 5; including the KSA score and the scores for the 17 technical and leadership questions, the total score available to each candidate was 90. (See, e.g., Summary Matrix for George Duckett ("Duckett Matrix") (Balaban Decl., Ex. 11) at US-DUCKETT 276.)

### 4. Results of the Interview Process

Plaintiff received a total score of 51, including a KSA score of 5. (Def.'s 56.1 ¶ 45.) Rambalakos received a total score of 84, including a KSA score of 5. (Id. ¶ 46.) Nguyen-Quoc received a total score of 43.5, including a KSA score of 3.5. (Id. ¶ 47.) Of the three candidates, Rambalakos's score of 84 was the highest score. (Pl.'s 56.1 ¶ 15.)

With respect to Plaintiff's score, Plaintiff did not answer 4 of the 15 technical questions. (Def.'s 56.1 ¶ 48; see also Duckett Matrix (reflecting score of 0 for questions number 5, 12, 13, and 14).) These questions each concerned the subject of "crack growth." (Def.'s 56.1 ¶ 49.) At the end of the interview, the panel gave Plaintiff an opportunity to go back and answer the questions, but he declined. (Id. ¶ 50.) Plaintiff admits that with respect to metal structures, the

Workshop Materials were "a very thorough and complete account of the requirements of fatigue and damage tolerance when it comes to certifying aircraft." (Id. ¶ 52; Pl. Dep. at 58:23-59:3.) The questions asked by the panel covered the same material from the Eastin workshop, and in particular, the subject of crack growth.[3] (Def.'s 56.1 ¶¶ 53, 55.)

Socias proposed the selection of Rambalakos for the Position because he received the highest score from the interview panel. (Id. ¶ 61.) On November 2, 2010, Socias officially announced the selection of Rambalakos. (Id. ¶ 62.) Members of the interview panel subsequently stated that Rambalakos performed well during the interview, and had the necessary education and experience for the Position. (Id. ¶¶ 63-64.) Plaintiff admits that Rambalakos was qualified for the Position, he was not more qualified than Rambalakos for the Position, he did not have more experience than Rambalakos in the areas of fatigue and damage tolerance, and he did not outperform Rambalakos during the interview process. (Id. ¶¶ 65-68.)

B.   Procedural History

Plaintiff filed his Complaint on October 18, 2012. (Compl.) Defendant filed an Answer on February 22, 2013. (Answer (Dkt. 9).) Discovery proceeded before Magistrate Judge Lois Bloom. At the close of discovery, the parties each sought leave to file a motion for summary judgment. (See Def.'s Ltr.-Mot. for Pre-Mot. Conference (Dkt. 43); Pl.'s Mot. for Pre-Mot. Conference (Dkt. 44).) Defendant filed the fully-briefed cross-motions on November 3, 2014. (See generally Dkts. 51-65.)

II.   LEGAL STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is

---

[3] In Plaintiff's words, "crack growth" refers to "the study of or the prediction of the rate at which a crack [in an aircraft] will change it's [sic] size under a given load condition." (Id. ¶ 56; Pl. Dep. at 60:11-13.)

material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the court "is required to construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003); see also Anderson, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

The moving party bears the initial burden to show an absence of genuine factual dispute. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment will be granted if the opposing party then "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat summary judgment, the opposing party must do more than demonstrate "some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and may not rely on "conclusory allegations," Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990). Where the party opposing summary judgment is proceeding pro se, the court must construe his filings liberally. See Ferran v. Town of Nassau, 471 F.3d 363, 369 (2d Cir. 2006).

### III. DISCUSSION

Plaintiff alleges employment discrimination on the basis of both race and age. Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); see also id. § 2000e-2(m)

("[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."). The ADEA prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

"Employment discrimination cases . . . are frequently said to fall within one of two categories: 'pretext' cases and 'mixed-motives' cases." Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1180 (2d Cir. 1992). Here, Plaintiff relies solely on a theory of pretext. (See Pl.'s Mem. at 3-4.) In a pretext case—analyzed under the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)—a plaintiff first must establish a prima facie case, which "is not onerous," Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). The defendant must next "articulate (not prove), via admissible evidence, a legitimate reason for the employment decision." Tyler, 958 F.2d at 1181. Finally, the plaintiff has an opportunity to persuade "the trier of fact that a discriminatory reason more likely than not motivated the employer, or . . . that the employer's proffered explanation is unworthy of belief." Id. (citing Burdine, 450 U.S. at 256).[4]

---

[4] Under the alternative, mixed-motives approach—first outlined by the Supreme Court in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)—the plaintiff's opening burden is greater than in establishing a prima facie case under McDonnell Douglas; the plaintiff must initially "focus his proof directly at the question of discrimination and prove that an illegitimate factor had a 'motivating' or 'substantial' role in the employment decision." Tyler, 958 F.2d at 1181 (quoting Price Waterhouse, 490 U.S. at 246 (plurality op.)). If the plaintiff makes such a showing, the burden is on the defendant to prove its affirmative defense "'that it would have reached the same decision as to [the employee's employment] even in the absence of the'" impermissible, discriminatory factor. Id. (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). In other words, in a mixed-motives case, "the plaintiff can satisfy his entire burden of proof by initially producing evidence sufficient to demonstrate that discrimination was 'in fact a "motivating" or "substantial" factor in the employment decision.'" Vahos v. Gen. Motors Corp., No. 06-CV-6783 (NGG) (SMG), 2008 WL 2439643, at *4 n.5 (E.D.N.Y. June 16, 2008) (quoting De la Cruz v. N.Y. City Human Res. Admin. Dep't of Soc. Servs., 82 F.3d 16, 24 (2d Cir. 1996) (emphasis in original)). Here, Plaintiff does not put forward a mixed-motives theory, and, as discussed below, has not put forward any direct evidence of discrimination. In addition, the Supreme Court has held that a mixed-motives theory is not available for

"The ADEA and Title VII set forth parallel requirements for a plaintiff to establish a prima face case of discrimination." Vazquez v. Southside United Hous. Dev. Fund Corp., No. 06-CV-5997 (NGG) (LB), 2009 WL 2596490, at *6 (E.D.N.Y. Aug. 21, 2009) (citing Nieves v. Angelo, Gordon & Co., 341 F. App'x 676, 679 (2d Cir. 2009) (summary order)). "In order to make out a prima facie case of discriminatory failure to promote, . . . a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the job for which she applied, (3) she was denied the job, and (4) the denial occurred under circumstances giving rise to an inference of discrimination . . . ." Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000); see also Vazquez, 2009 WL 2596490, at *6. A plaintiff may demonstrate that the denial occurred under circumstances giving rise to an inference of discrimination through direct evidence, or by showing "that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). "To be deemed similarly situated, individuals must be similarly situated in all material respects." Roa v. Mineta, 51 F. App'x 896, 899 (2d Cir. 2002) (summary order) (citing Shumway v. United Parcel Serv., Inc., 118 F3d 60, 64 (2d Cir. 1997)). "The question of whether two individuals are similarly situated may present a factual issue for the jury, but 'a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met.'" Parrilla v. City of New York, No. 09-CV-8314 (SAS), 2011 WL 611849, at *8 (S.D.N.Y. Feb. 16, 2011) (citing Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007)).

---

ADEA claims, as the text of that statute requires a plaintiff to show that age discrimination was the but-for cause of the employment action, rather than merely a contributing or motivating factor. See generally Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343 (2009). Still, courts within the Second Circuit continue to apply the McDonnell Douglas burden-shifting evidentiary framework to both Title VII and ADEA claims, notwithstanding that the ultimate question with respect to causation differs between the two claims. See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 105-06 (2d Cir. 2010).

For the purposes of Defendant's motion for summary judgment, the parties agree that Plaintiff can establish the first three elements of his prima facie case—that he is a member of the protected classes, was qualified for Position, and was denied the promotion. Defendant argues that Plaintiff cannot establish the fourth element of a prima facie case of race or age discrimination because he has failed to offer any evidence that the failure to promote occurred under circumstances giving rise to an inference of discrimination. The court agrees, and therefore GRANTS summary judgment in favor of Defendant as to both of Plaintiff's claims. In addition, even if Plaintiff could establish a prima facie case, Defendant has offered a legitimate reason for the decision to select Rambalakos for the Position, and Plaintiff has failed to put forward any evidence to rebut Defendant's legitimate justification.

A.   Title VII

The parties agree that the candidate who received the best score during the interview process was selected for the Position. Plaintiff argues, however, that the test administered to the candidates did not reflect the requirements set forth in the Vacancy Announcement, and did not conform to internal FAA hiring policies. (See Pl.'s Mem. at 12.) In other words, Plaintiff appears to allege that by not including any or enough questions specifically about composite materials (his specialty) in the interview, the panel was able to shield a discriminatory hiring decision made on the impermissible basis of age and/or race. But Plaintiff's objections to the interview procedure—and his conclusory belief that the selection of particular interview questions reflected some sort of age or race discrimination that disadvantaged him and advantaged Rambalakos—simply do not indicate circumstances that give rise to an inference of discrimination.

As an initial matter, Plaintiff offers no direct evidence of discrimination on the basis of race. "That is, there is no evidence that any individual ever made inappropriate comments regarding [his] [race], or otherwise indicated either overtly or implicitly that [his] [race] was a basis for discrimination." Fox v. State Univ. of N.Y., 686 F. Supp. 2d 225, 230 (E.D.N.Y. 2010); see also Jenkins v. N.Y. State Banking Dep't, No. 07-CV-11317 (JGK), 2010 WL 2382417, at *3 n.2 (S.D.N.Y. Sept. 30, 2010) ("[T]he plaintiff offers nothing more than conclusory statements to support any discriminatory allegation and fails to point to any direct evidence of discrimination . . . ."), aff'd, 458 F. App'x 36 (2d Cir. 2012) (summary order).

Nor has Plaintiff offered any evidence that would allow a factfinder to draw an inference of discrimination because similarly situated employees who were not members of the protected class were offered the Position. In the failure-to-promote context, a comparison of the plaintiff's qualifications to those of the promoted employee is appropriate at the prima facie stage. See Anyanwu v. City of New York, No. 10-CV-8498 (AJN) (THK), 2013 WL 5193990, at *14 (S.D.N.Y. Sept. 16, 2013) (surveying failure-to-promote case law and explaining that "the Second Circuit appears to require at least some comparison of the plaintiff's qualifications with those of the promoted employee(s) at the prima facie stage." (citing Mandell v. Cnty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2002); Terry v. Ashcroft, 336 F.3d 128, 139 (2d Cir. 2003)). But see, e.g., Byrnie v. Town of Cromwell, 243 F.3d 93, 103 (2d Cir. 2007) (holding, in failure-to-hire context, that plaintiff established prima facie case of age discrimination by showing only that "[h]e was a 64 year old male job applicant who . . . was eminently qualified for the art teacher position that [defendant] awarded to [a] 42 year old female . . . .") As the Anyanwu court explained:

> Indeed, comparing qualifications at the prima facie stage makes intuitive sense, because selecting another employee for promotion instead of the

11

> plaintiff involves choosing among multiple candidates. The mere fact that
> the plaintiff was qualified for the job—which is established as the second
> element of the prima facie case—says nothing about which candidate was
> more qualified. As a logical matter, only if a reasonable employer would
> have found the plaintiff to be significantly better qualified for the job, but
> this employer did not, [can] the factfinder ... legitimately infer that the
> employer consciously selected a less-qualified candidate—something that
> employers do not usually do, unless some other strong consideration, such
> as discrimination, enters into the picture.

2013 WL 5193990, at *15 (alterations and emphases in original) (internal quotation marks and citation omitted). Here, the undisputed record reflects that Plaintiff was less qualified for the Position than Rambalakos—indeed, Rambalakos scored far better during the interview, and had a stronger academic background. See, e.g., id. at *17 (plaintiff established prima facie case with respect to particular promotion where he showed that four employees selected over him for the promotion did not hold a relevant license held by plaintiff and were therefore less qualified for the position); Gonzalez v. City of New York, 354 F. Supp. 2d 327, 335 (S.D.N.Y. 2005) (plaintiffs failed to establish prima facie case at summary judgment in failure-to-promote action where they offered no evidence that individuals who were promoted in their place were less qualified). Moreover, nothing in the record indicates that the technical test questions were designed specifically to advantage Rambalakos over Plaintiff.

Plaintiff argues that the FAA failed to follow internal policy during the interview process. Specifically, he argues that (1) Socias violated the policy by failing to develop proper criteria and by failing to insure that the policy was followed by the interview panel, and (2) Eastin ignored that composite materials were a part of the Vacancy Announcement, and instead drafted technical questions covering only his own area of expertise, fixed-wing metal structure. (See Pl.'s Mem. at 8-9.) In support of his argument, Plaintiff submitted two versions of the FAA's Human Resources Policy Manual for Permanent Internal Assignment, one effective

November 26, 2012, and one effective February 20, 2005. (See Suppl. Duckett Decl., Exs. C-D.) However, Plaintiff fails to demonstrate that the version of the manual effective February 20, 2005, governed the hiring for the Position, which occurred in 2010. More significantly, Plaintiff fails to offer any evidence that the FAA actually violated the policy, or if it did, that this violation (which would amount to failing to develop proper hiring criteria and failing to include a broad enough range of technical questions for the particular vacancy) raises an inference of race or age discrimination.

Plaintiff also attempts to use statistical evidence to show race discrimination, and submits a purported FAA annual status report describing the percentage of employees by pay grade and race or ethnicity; according to Plaintiff, the report shows that African-American employees of the FAA are underrepresented in the GS-14 pay band when compared to other pay bands within the FAA. (See Pl.'s Mem. at 11; Pl.'s Aff. Attaching References for Mot. for Summary J. ("Pl's Aff.") (Dkt. 61), Ex. H.) However, Plaintiff fails to explain how the FAA employees described in the table are similarly situated to him and/or how the data is relevant with respect to a claim of discrimination based on the failure-to-promote African-Americans, and therefore the evidence (assuming, for purposes of this motion, that it is properly authenticated and admissible) does not allow an inference of discrimination. See Wojcik v. Brandiss, 973 F. Supp. 2d 195, 213 (E.D.N.Y. 2013) (surveying case law and disregarding purported statistical evidence because "racial breakdown alone 'does not make it more or less likely that [Defendants] discriminated against [Plaintiff] because of her race.'" (quoting Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999)); see also, e.g., Raskin v. Wyatt Co., 125 F.3d 55, 67-68 (2d Cir. 1997) (discussing use of statistical evidence in employment discrimination cases and affirming preclusion of evidence). (See also Reply Mem. of Law of Def. in Further Support for Mot. for

Summary J. (Dkt. 58) at 6 n.2.) Similarly, Plaintiff fails to provide adequate evidentiary support for his assertion that there is a statistical significance between the percentage of African-American employees within the GS-14 pay band across all FAA departments and the percentage within the engine and propeller directorate. (See Pl.'s Mem. at 11.)

Beyond the non-material evidence discussed above, Plaintiff only offers conclusory assertions that he was denied the promotion as a result of his race. The court recognizes that a plaintiff's burden to put forward a prima facie case "is not onerous," Burdine, 450 at 253, but in this case, nothing in the record would allow a factfinder to justify the presumption that the FAA discriminated against Plaintiff on the basis of his race. See Anyanwu, 2013 WL 5193990, at *16 ("[I]f one puts the various articulations of the McDonnell Douglas standard aside, the fundamental question at the prima facie stage is always whether the plaintiff has come forward with enough proof to justify a presumption that his employer illegally discriminated against him.").

Finally, even if Plaintiff could establish a prima facie case of race discrimination, Defendant has offered a legitimate reason for the decision to select Rambalakos for the Position, and Plaintiff has failed to put forward any evidence beyond mere conjecture and speculation to rebut Defendant's legitimate justification. It is undisputed that Rambalakos outperformed Plaintiff during the interview, and was otherwise well-qualified for the Position. It is also undisputed that the FAA utilized a uniform interview process for the three candidates. An employer can defeat a prima facie showing of discriminatory failure to promote by demonstrating that the individual promoted instead of the plaintiff was as- or better-qualified. See, e.g., Brierly v. Deer Park Union Free Sch. Dist., 359 F. Supp. 2d 275, 295-96 (E.D.N.Y. 2005) (holding that plaintiff failed to show pretext where selectee had superior

performance in various stages of interview process, and where plaintiff "offered no evidence to suggest that this seemingly thorough and professional procedure was actually a subterfuge for discrimination"); Witkowich v. Gonzales, 541 F. Supp. 2d 572, 579 (S.D.N.Y. 2008) (holding that plaintiff failed to show pretext where, inter alia, selectee had highest application score). "While [courts] must ensure that employers do not act in a discriminatory fashion, we do not sit as a super-personnel department that reexamines an entity's business decisions." Delaney v. Bank of Am. Corp., 766 F.3d 163, 169 (2d Cir. 2014) (internal quotation marks and citation omitted). Here, even if Plaintiff could establish a prima facie case, a reasonable jury could not find that the selection of Rambalakos over Plaintiff reflected race discrimination against Plaintiff, rather than a legitimate business decision to promote a qualified candidate to the Position. In other words, as stated by the court in Brierly, Plaintiff offers no evidence to support his theory that the objective and professional interview procedure utilized by the FAA "was actually a subterfuge for discrimination." 359 F. Supp. 2d at 295-96.

**B. ADEA**

Plaintiff's age discrimination claim fails for similar reasons.

Again, Plaintiff has not offered any direct evidence of discrimination, and must rely on evidence allowing an inference of discrimination. Plaintiff has failed to offer any such evidence—beyond his mere speculation—that would allow a factfinder to draw an inference of discrimination because similarly situated employees who were not members of the protected class were offered the Position. Plaintiff avers in a declaration that "[a]t some time during the timeframe circa 2005, Anthony Socias, the manager of the [NYACO], during one or more of his all hands meeting[s] broached the subject of succession planning. . . . On at least one occasion, I, George J. Duckett, was cited as an illustrative example for succession planning." (Pl.'s Aff.

15

Regarding Succession Planning (Pl.'s Aff., Ex. G).) This, according to Plaintiff, shows that Socias was aware of Plaintiff's age, and that the promotion of Plaintiff in lieu of Rambalakos (who, although over the age of 40, is much younger than Plaintiff) "would have been inconsistent with Mr. Socias' expressed concept of succession planning." (Pl.'s Mem. at 9.) However, "there is nothing in age discrimination jurisprudence that would prevent [an employer] from succession planning." Crowe v. Leroy Cent. Sch. Dist., 949 F. Supp. 2d 435, 446 (W.D.N.Y. 2013) (adopting report and recommendation) (internal quotation marks and citation omitted); see also, e.g., Boston v. Blue Cross & Blue Shield of Kan., Inc., 431 F. App'x 763, 767 (10th Cir. 2011) (unpublished) ("We . . . reject the notion that any mention of succession planning is tantamount to pretext; compliance with the ADEA and succession planning need not be mutually exclusive."); Colosi v. Electri-Flex Co., 965 F.2d 500, 502 (7th Cir. 1982) ("[A] company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct.").

In any event, the probative value of Socias's succession planning, if relevant at all, is null. First, it occurred approximately five years before Plaintiff applied for the Position. Second, and more importantly, this is a failure-to-promote action in which Plaintiff remains employed by the FAA in his position as an aerospace engineer. (See Pl's Dep. at 28:16-21.) The fact that an employer engaged in succession planning could conceivably be probative evidence of age discrimination for an employee whose employment was subsequently terminated, but it means far less with respect to whether a decision—made five years after the alleged succession planning—not to promote an employee to a new position reflects age discrimination.

Finally, as discussed above with respect to his race discrimination claim, even if Plaintiff could establish a prima facie case, Defendant has offered a legitimate reason for the decision to

select Rambalakos for the Position (Rambalakos's superior performance during the interviews and his strong qualifications for the Position), and Plaintiff has failed to put forward any evidence to rebut Defendant's legitimate justification. Accordingly, a reasonable jury could not find that the selection of Rambalakos reflected age discrimination against Plaintiff.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED, Plaintiff's motion for summary judgment is DENIED, and all claims against Defendant are DISMISSED WITH PREJUDICE. The Clerk of Court is respectfully directed to enter judgment and to close the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      August 17, 2015

NICHOLAS G. GARAUFIS
United States District Judge